Patrick M. Flatley
United States Bankruptcy Judge

Dated: Monday, September 12, 2016 1:27:41 PM

# IN THE UNITED STATED BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SHIRLEY E. GODFREY, | ) | Case No. 14-bk-565 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| IN RE: | ) | |
| | ) | |
| MORGANTOWN EXCAVATORS, INC | ) | Case No. 12-bk-570 |
| | ) | |
| Debtor | ) | Chapter 7 |
| | ) | |
| | ) | |
| MORGANTOWN EXCAVATORS, INC., And SHIRLEY E. GODFREY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 1:13-ap-24 |
| | ) | |
| THE HUNTINGTON NATIONAL BANK, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

On June 14, 2016 Shirley E. Godfrey, Morgantown Excavators, Inc. ("MEI"), and their respective Chapter 7 bankruptcy estates (collectively, the "Plaintiffs"), filed their complaint against The Huntington National Bank ("HNB") and Myron Bowling Auctioneers, Inc. ("Myron Bowling"), alleging multiple violations of the West Virginia Uniform Commercial Code (U.C.C.) and other applicable state law based on HNB's sale of MEI's equipment, which served as collateral securing certain loans HNB made to the Plaintiffs, to Myron Bowling. By previous memorandum opinion and order, the court resolved HNB's motion for summary judgment partially in its favor

1

and dismissed Myron Bowling as a defendant.  The only remaining claim before the court is that HNB sold MEI's collateral equipment in a commercially unreasonable manner.

The Plaintiffs seek summary judgment in their favor solely as to HNB's liability based upon the claim that HNB failed to sell the collateral in a commercially reasonable manner because the notice provided was not commercially reasonable.  They assert that because equitable title passed to Myron Bowling earlier than HNB's notice claimed it would sell MEI's equipment, HNB disposed of the collateral without sufficient notice.  In response, HNB argues that the Plaintiffs seek to reinterpret HNB and Myron Bowling's Asset Purchase Agreement in a way that contradicts the intentions of the drafting parties.  HNB further asserts that no equitable interest was transferred until legal title passed, and even if an equitable interest passed, such a transfer is not a disposition under the U.C.C.  For the reasons stated herein, the court will grant summary judgment on the requested declaration by the Plaintiffs.

## I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is only appropriate if the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party seeking summary judgment must make a prima facie case by showing: first, the apparent absence of any genuine dispute of material fact; and second, the movant's entitlement to judgment as a matter of law on the basis of undisputed facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 248 (1986).

The movant bears the burden of proof to establish that there is no genuine dispute of material fact.  *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986).  Showing an absence of any genuine dispute as to any material fact satisfies this burden.  *Id*. at 323.  Material facts are those necessary to establish the elements of the cause of action.  *Anderson*, 477 U.S. at 248.  Thus, the existence of a factual dispute is material—thereby precluding summary judgment—only if the disputed fact is determinative of the outcome under applicable law.  *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).  "Disposition by summary judgment is appropriate . . . where the record as a whole could not lead a rational trier of fact to find for the non-movant." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (citation omitted); *see also Anderson*, 477 U.S. at 248.

If the moving party satisfies this burden, the nonmoving party must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial.  *Celotex Corp.*, 477 U.S. at

322-23. The court is required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Shaw*, 13 F.3d at 798. However, the court's role is not "to weigh the evidence and determine the truth of the matter [but to] determine whether there is a need for a trial." *Anderson*, 477 U.S. at 249-50. Nor should the court make credibility determinations. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). If no genuine issue of material fact exists, the court has a duty to prevent claims and defenses not supported in fact from proceeding to trial. *Celotex Corp.*, 477 U.S. at 317.

## II. BACKGROUND

The court summarized many of the relevant facts in its previous memorandum opinion disposing of the prior motions for summary judgment filed by HNB and Myron Bowling. *The Bankruptcy Estates of Morgantown Excavators, Inc. v. The Huntington National Bank (In re Godfrey)*, 537 B.R. 271 (Bankr. N.D.W. Va. 2015). Nonetheless, the court will briefly recite certain key facts.

MEI executed multiple promissory notes to HNB on April 9, 2010. Shirley Godfrey personally guaranteed repayment of these notes. As collateral for the notes, MEI granted HNB a security interest in multiple categories of collateral, including its equipment. MEI failed to make required payments on its promissory notes, entered into multiple forbearance agreements, and then again defaulted by failing to make payments. As a result, HNB made plans to sell MEI's equipment.

On February 27, 2012, HNB and Myron Bowling entered into an Asset Purchase Agreement (the "Agreement"). The parties executed this agreement in anticipation of a future sale of MEI's equipment. By its terms, the Agreement provided that Myron Bowling would pay $535,000 to HNB for MEI's collateral. The Agreement obligated Myron Bowling to pay a 25% deposit upon execution of the contract and to pay the remaining 75% upon "Purchaser's removal of the equipment from its location and HNB providing title (including title certificates for any titled Equipment)." Furthermore, under the Agreement, Myron Bowling was to take possession of the property no later than March 15, 2012. The Agreement required HNB to deliver good title for all equipment and permitted the parties to accept partial performance of the contract should complications arise outside of their control. Finally, the Agreement contains a merger clause which indicates that it constitutes the entire agreement between the parties; supersedes any prior

agreements, representations, or understandings; and may only be modified by signed written agreement of the parities.

On March 5, 2012, Myron Bowling took possession of MEI's equipment. Then, on March 22, 2012, HNB sent a notice of private disposition to the Plaintiffs. This notice stated that HNB would sell MEI's equipment by private disposition "sometime after April 9, 2012." The next day, March 23, 2012, Myron Bowling paid HNB the full purchase price of MEI's equipment. Sometime before April 6, 2012, Myron Bowling began to advertise for a public auction of MEI's equipment to be held on April 20, 2012. On April 18, 2012, HNB delivered a Bill of Sale and executed titles for the equipment in favor of Myron Bowling. Myron Bowling then sold the equipment at a public auction on April 20, 2012.

### III. DISCUSSION

The Plaintiffs assert that the facts before the court demonstrate that Myron Bowling acquired equitable title to MEI's equipment no later than March 23, 2012. The Plaintiffs further allege that transfer of equitable title amounts to a disposition of collateral under the Uniform Commercial Code ("U.C.C."). Thus, the Plaintiffs argue that HNB failed to provide commercially reasonable notice to the Plaintiffs that HNB was disposing of MEI's collateral. In response, HNB argues that it and Myron Bowling contracted to transfer title in a commercially reasonable manner pursuant to the U.C.C., that the Plaintiffs seeks to impose upon the parties to the Agreement intentions that they lacked, and that the Agreement did not pass equitable title to Myron Bowling. Moreover, HNB argues that a transfer of equitable title is not a disposition of property under West Virginia law.

Under West Virginia law, "title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, . . . even though a document of title is delivered at a different time" unless the parties explicitly agree otherwise. W. Va. Code § 46-2-401(2). Thus, contracting parties can indicate when title passes during a sale, however, in the absence of an explicit agreement, title passes to the purchaser upon delivery. Moreover, the U.C.C. "specifically limits retention of title in delivered goods to a reservation of a security interest." *Witmer v. Kleppe*, 460 F.2d 1245 (4th Cir. 1972) (citing W. Va. Code § 46-2-401(1)). As a party that retains legal title maintains only a security interest in the property subject to the sale, a transfer of an interest in property other than legal title must occur because a party cannot take a security interest in its own property.

Property interests include both legal and equitable interests. Equitable title refers to "character and quality of title—to the actual and substantial ownership, rather than the strictly legal title." *Cook v. Citizens' Ins. Co. of Missouri*, 105 W. Va. 375, 378 (1928). Moreover, "equitable title . . . rests rather 'on the beneficial ownership and the right to the use and income.'" *Id.* at 376 (*quoting Insurance Company v. Kuhn*, 207 Ill. 166, 171 (1904)). A party has equitable title if "the holders thereof have in a court of equity an equitable chose in action to compel the holders of the legal title to convey." *Steber v. Combs,* 121 W. Va. 509, 514 (1939).

In this case, the Agreement expressed the intentions of the parties. Moreover, the Agreement contained a merger clause that provided that it "constitutes the entire agreement between the parties pertaining to the subject matter hereof and supersedes any and all prior agreements, representations, and understandings of the parties, written or oral." The clause also restricted modification of the agreement by any means other than a subsequently written and signed agreement. With regard to the application of W. Va. Code § 46-2-401, two provisions of the Agreement must be considered. First, the Agreement required the Purchaser to take possession of the equipment no later than March 15, 2012. Second, the Agreement required the Purchaser to pay the purchase price's remaining balance at a later date, at which time the Seller would deliver title to the equipment.[1] Therefore, the contract explicitly modifies when title transfers: rather than obtaining title upon acquiring possession of the property, equitable title shifted upon payment of the entire purchase price. In accordance with W. Va. Code § 46-2-401(1), the failure to transfer legal title at the time of payment amounted to the retention of a security interest. Nonetheless, a transfer of an interest in the property clearly occurred at that time.

In addition to the U.C.C., West Virginia common law supports the conclusion that Myron Bowling acquired equitable title before April 20, 2012. Myron Bowling possessed the equipment, it paid the full contractual purchase price for the equipment, and it began marketing the equipment for sale. Considering Myron Bowling intended to acquire the property solely for the purpose of reselling it at auction, its marketing of the property in preparation for the sale well in advance of its receipt of legal title indicates that it possessed a property interest sufficient to permit its use of

---

[1] The court recognizes that the parties did not completely honor the form of the agreement. Myron Bowling paid the entire purchase price on March 23, 2012, however HNB did not deliver legal title at that time, as the contract required. However, this fact does not alter the court's analysis as the execution of the transaction, not the terms of the agreement, are at issue here.

5

the property.  Thus, it enjoyed all of the benefits of ownership at that time.  Moreover, Myron Bowling fully performed its obligations under the Agreement, and thus would be entitled to enforce the Agreement in a court of equity.

HNB argues that the Plaintiffs, as strangers to the Agreement, attempt to give meaning to the Agreement that the parties did not intend because HNB and Myron Bowling did not intend to pass equitable title through the execution of the Agreement.  However, execution of the Agreement itself did not pass equitable title—if anything, it delayed passage of title from the time when Myron Bowling took possession of the property until the time it paid the full purchase price.  Rather, the completion of the transaction described in the Agreement passed title to the property.  To be clear, equitable title passed by operation of law based on the performance of the Agreement, and nothing in the Agreement indicated that the parties intended to avoid the legal effect of the Agreement's completion.  HNB further argues that the Agreement contained a provision that required the sale to comply with the U.C.C., and thus the parties did not intend to pass title before notice in compliance with the U.C.C. was given.  However, such a provision does nothing to prevent liability from arising if the parties did indeed violate the U.C.C. in performing under the contract.

West Virginia law, by way of Article 9 of the U.C.C., requires a secured creditor to undertake certain actions before disposing of debtor's collateral.  W. Va. Code § 46-9-610 and 611.  Specifically, "every aspect of a disposition of collateral . . . must be commercially reasonable" and "a secured party that disposes of collateral . . . shall send to the [debtor] a reasonable authenticated notification of disposition.  W. Va. Code § 46-9-610 and 611.  The notification date is the date on which "a secured party sends to the debtor . . . an authenticated notification of disposition."  W. Va. Code § 46-9-611(a)(1).  However, notification of disposition must also be reasonable.  W. Va. Code § 46-9-611(a)(2).  Whether a notice is reasonably timely is a question of fact.  W. Va. Code § 46-9-612.  The purpose of giving the debtor notice before disposing of its property is to allow the debtor an opportunity to take action in order to potentially redeem the property or bring a better offer to the table.  "A notification that is sent so near to the disposition date that a notified person could not be expected to act on or take account of the notification would be unreasonable."  W. Va. Code § 46-9-612 cmt. 1.

In order to trigger the requirements of §§ 46-9-611 and 612, a secured creditor must dispose of a debtor's collateral.  However, the U.C.C. does not define disposition.  *General Elec. Capital Corp. v. Vashi*, 480 N.W.2d 880, 881 (Iowa 1992).  Neither has any West Virginia court sought to

6

define the term. Thus, the court must look to generally accepted principles of law to "predict how the state's highest court would rule on an unsettled issue." *Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co.*, 514 F.3d 327, 329 (4th Cir. 2008).

Many courts have considered the definition of 'disposition' under Article 9, and concluded that it encompasses various types of permanent transfers of possession. *See e.g. Williams v. Regency Financial Corp.*, 309 F.3d 1045, 1049 (8th Cir. 2002) (finding that "sale and disposition are not intended to be synonymous, and that a disposition of collateral need not be in the form of a sale."); *Charles E. Brauer Co., Inc. v. Nationsbank of Va. N.A.*, 466 S.E.2d 382, 386 (Va. 1996) ("The term 'disposition' . . . means an actual transfer of an interest in the collateral by sale, lease, or contract."); *Mechanics Nat'l Bank of Worcester v. Gaucher*, 7 Mass. App. Ct. 143, 3886 N.E.2d 1052, 1055 (Mass. Ct. App. 1979) ("Disposition implies a permanent transfer of possession."); *In re the Estate of Rothko*, 84 Misc.2d 830, 379 N.Y.S.2d 923, 958 (Sur. Ct. N.Y. 1975) (finding that a "shipment to [an] alleged purchasers for their permanent possession or permanent control" is a disposition under the U.C.C.). The U.C.C. defines sale to mean "the passing of title from the seller to the buyer for a price." W. Va. Code § 46-2-106(1). As is made clear above, courts have repeatedly found that a disposition is a broader form of a transfer than a sale. Thus, the requirements for a disposition are more lenient than those for a sale.

In *Williams*, the Eighth Circuit indicated that transfer of legal title is not necessary for a U.C.C. disposition. 309 F.3d at 1049. In that case, the appellee-defendant was a car dealership that acted as a "repossession churning mill." *Id.* at 1046. The defendant engaged in a system of quickly selling cars to individuals with bad credit, repossessing said cars, and then quickly reselling them. *Id.* at 1046-47. Frequently, the dealership resold cars before acquiring repossession title. *Id.* at 1047. Despite lacking legal title, and thus failing to transfer legal title, the court held that "'disposition' encompasses the transactions by which [the defendant] permanently transferred the [plaintiff's car]." *Id.* at 1049.

As the court finds the reasoning in *Williams* persuasive, it now finds that a transfer of equitable title amounts to a disposition under the U.C.C. Therefore, HNB disposed of MEI's equipment no later than March 23, 2012, the date upon which Myron Bowling paid the full purchase price for the equipment. As HNB sent this notice only one day before it disposed of MEI's equipment, the disposition was not reasonably noticed, and was therefore in violation of W. Va. Code § 46-9-611. Furthermore, the notice sent to the Plaintiffs indicated that HNB would sell

7

the equipment no earlier than April 9, 2012. As the disposition occurred on or before March 23, 2012, this notice was inadequate. Moreover, because W. Va Code § 46-9-610 requires all aspects of a disposition to be reasonable, and HNB's notice was unreasonable, the disposition also violated that provision.

## IV. CONCLUSION

Based upon the court's analysis herein, the court will enter a separate order granting summary judgment in favor of the Plaintiffs regarding the HNB's liability under W. Va. Code §§ 46-9-610 and 611. As the Plaintiffs motion requests judgment only as to liability, the remaining issues are preserved for trial.